IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE TRAILS, LLC, *et al.*,

    Plaintiffs,

v.                                                                                  Case No. 1:15 CV-00996-LF-CG

STEVEN J. METRO, *et al.*,

    Defendants.

**DEFENDANTS WILSON & COMPANY, INC. AND STEVEN J. METRO'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS OVERPECK'S AND GALWAY'S TORTIOUS INTERFERENCE CLAIM AND CONSPIRACY CLAIM**

COME NOW Defendants, Wilson & Company, Inc., Engineers & Architects ("Wilson"), by and through its attorneys, Montgomery & Andrews, P.A. (Kevin M. Sexton, Esq., John S. Campbell, Esq. and Miguel Archuleta, Esq.), and Steven J. Metro ("Metro"), by and through his attorneys Foster, Rieder & Jackson, P.C. (Eric Loman), and move the Court for summary judgment on the claims made by Plaintiffs, Overpeck Management, LLC ("Overpeck") and Galway Construction, LLC ("Galway"), for Tortious Interference With Contracts (Count VI), and for Civil Conspiracy (Count IX).

I. **INTRODUCTION.**

This case arises out of the design and construction of the Boca Negra Dam ("BND") by the Albuquerque Metropolitan Flood Control Authority ("AMAFCA"). The cost of the construction of the BND was shared by AMAFCA, the City of Albuquerque (the "City"), The Trails, LLC ("The Trails"), and KB Home New Mexico, Inc. ("KB Home") [1]. The cost of the engineering design of the BND was shared by the Trails and KB Home. The Trails and KB Home retained Wilson to design the BND.

---

[1] Vista Vieja Development, LLC was the original signor but assigned its rights to KB Home New Mexico, Inc.

The Trails is a real estate developer that owned land in Northwest Albuquerque called The Trails Subdivision (sometimes referred as the "Trails Subdivision"). Galway and Overpeck entered into contracts with Real Capital Solutions or an affiliate of Real Capital Solutions (collectively "RCS"). RCS was the then owner of land in The Trails Subdivision (the "RCS Property") (See, Amended Complaint ¶ 79). RCS contracted with Galway on April 22, 2011, to provide general contracting services for development of the RCS Property. RCS also contracted with Overpeck in May 2011, to provide project management services for development of the RCS Property. Overpeck and Galway's contracts were terminated by RCS in December 2012.

Overpeck and Galway allege that the Wilson and Metro are liable to them for damages arising out of Tortious Interference with Contracts (Count VI) and for Civil Conspiracy (Count IX). This motion is for a summary judgment on Overpeck's and Galway's claims only.

Overpeck and Galway allege that Wilson and Metro "willfully and intentionally interfered with [Galway and Overpeck's] contracts with RCS by intentionally delaying the construction and development of the BND, as well as encouraging and/or directing the City to impose a [moratorium] on Plaintiffs." See Amended Complaint (filed May 2, 2016, Document 38) ¶ 19.

Overpeck and Galway cannot establish one of the required elements of tortious interference with contract and Counts VI and IX must therefore be dismissed.

II. **STATEMENT OF UNCONSTESTED MATERIAL FACTS.**

The Uncontested Material Facts are set forth in the pleadings, the Answers to Interrogatories by Overpeck, and Galway, the Declaration of Daniel Aguirre, P.E.

("Aguirre Declaration") and the Declaration of Steve Metro, P.E. (the "Metro Declaration"). Overpeck and Galway's relevant answers to interrogatories are attached hereto as **Exhibit A**; the Aguirre Declaration is attached hereto as **Exhibit B**; and the Metro Declaration is attached as **Exhibit C**.

1. AMAFCA, the City, The Trails and Vista Vieja (who later assigned its rights to KB Home) executed the Agreement to Provide Design, Construction and Maintenance for Boca Negra Detention Dam and Outfall Pipe and Adjacent Unser Boulevard Improvements ("Four Party Agreement"), effective On September 22, 2005. Amended Complaint ¶ 16, 17, 18; Wilson-Aguirre Answer to Amended Complaint (filed May 4, 2016, Document 40) ¶¶ 12, 13.

2. Pursuant to the Four Party Agreement, The Trails and KB Home agreed to retain an engineering firm and pay the cost of the design of the BND. Amended Complaint ¶ 17, 18; Wilson-Aguirre Answer ¶¶ 12, 13.

3. The Trails and KB Home retained Wilson as the engineering consultant to design the BND. Amended Complaint ¶ 18; Wilson-Aguirre Answer ¶13.

4. Pursuant to the Four Party Agreement, The Trails and KB Home agreed to pay for a share of the cost of the construction of the BND. Amended Complaint ¶ 17, 18; Wilson-Aguirre Answer ¶¶ 12, 13.

5. Galway contracted with RCS, on April 22, 2011, to provide general contracting services for the RCS Property within the Trails Subdivision subject to Galway's tortious interference claim. *See* Exhibit A, Galway's answer to Interrogatory No. 2.

6. Overpeck contracted with RCS, in May 2011, to provide project management services for the RCS Property within the Trails Subdivision. Amended Complaint, Page 18, paragraph 80; see also Exhibit A, Overpeck's answer to Interrogatory No. 2.

7. Overpeck and Galway allege work in the RCS Property was either limited or did not go forward, during the moratorium. *See* Exhibit A, Overpeck and Galway's answer to Interrogatory No. 6.

8. Galway and Overpeck allege their contracts with RCS were terminated by RCS in December 2012. *See* Exhibit A, Overpeck's and Galway's answers to Interrogatory No. 2.

9. Neither Wilson nor Metro had any knowledge of who Overpeck was, before this lawsuit. Aguirre Declaration, ¶ 5, 7; Metro Declaration ¶ 4, 5.

10. Neither Wilson nor Metro had any knowledge of Overpeck's contract with RCS, before this lawsuit. Aguirre Declaration, ¶¶ 6; Metro Declaration ¶ 6.

11. Wilson knew that Galway existed and that Rick Beltramo was associated with Galway in some way but had no other knowledge of Galway or its activities until this lawsuit was filed. Aguirre Declaration, ¶ 8, 9, 10, and 12.

12. Metro had no knowledge of who Galway was, before this lawsuit. Metro Declaration ¶ 7, 8.

13. Neither Wilson nor Metro had any knowledge of Galway's contract with RCS, before this lawsuit. Aguirre Declaration, ¶ 13; Metro Declaration ¶ 9.

14. Metro had no knowledge of who RCS was, before this lawsuit. Metro Declaration ¶ 10.

15. Sometime after 2012 Wilson was retained by RCS to advise it as to the circumstances under which the flow permitted into the BND might be changed and Wilson wrote a report and provided it to RCS. Aguirre Declaration, ¶ 14.

16. At the time neither Dan Aguirre nor any other officer or director of Wilson had any knowledge concerning RCS, its activities or why it was seeking the information that Wilson provided. Aguirre Declaration, ¶ 15.

III. **ARGUMENT.**

A. **Summary Judgment.**

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Herrera v. Santa Fe Public Schools*, 956 F.Supp.2d 1191, 1221 (D.N.M.2013) (Browning, J.) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991)). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence— using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557 (Brennan, J., dissenting).

Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *See Id.*, at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986). The party opposing a motion for summary judgment must "set forth specific facts showing that

there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir.1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). Rule 56(c)(1) provides: "A party asserting that a fact...is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259, 106 S.Ct. 2505.

    B.    **Tortious Interference.**

The tort of tortious interference with an existing contract is an intentional tort. *Guest v. Berardinelli*, 2008-NMCA-144, ¶ 32, 145 N.M. 186, 196, 195 P.3d 353, 363; *Restatement (Second) of Torts* § 766. There are five elements that Overpeck and Galway must prove to establish that Wilson and Metro intentionally interfered with Overpeck's and Galway's existing contracts with RCS: (1) that Wilson and Metro had knowledge of the contracts; (2) that Overpeck and Galway were unable to fulfill their contractual obligations; (3) that Wilson and Metro played an active and substantial part in causing Overpeck and Galway to lose the benefits of their contracts; (4) that Overpeck and Galway suffered damages resulting from the loss of the benefit of their

6

contracts, and (5) that Wilson and Metro induced the loss of the contracts without justification or privilege to do so. *Guest*, 2008-NMCA-144, ¶ 32.

To have played an active and substantial part in causing Overpeck and Galway to lose the benefits of their contracts, there must be some voluntary conduct on the part of Wilson and Metro, some overt act which influenced RCS to terminate its contracts with Overpeck and Galway. *Wolf v. Perry*, 1959-NMSC-044, ¶ 21, 65 N.M. 457, 461–62, 339 P.2d 679, 682 (stating that a "plaintiff ... must allege ... that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act"). In causing one to lose the benefits of the contract, the tortfeasor must act either with an improper motive or by use of improper means. *See Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 20, 125 N.M. 748, 965 P.2d 332; *Guest*, 2008-NMCA-144, ¶ 32.

Moreover, because Overpeck and Galway allege tortious interference with an existing contract, the court's focus when applying these elements is upon actions that occurred after the contracts came into existence (i.e., post April/May 2011). *See Wolf*, 1959-NMSC-044, ¶ 28.

To satisfy the first element, Overpeck and Galway must allege and prove that Wilson and Metro had knowledge of Overpeck's and Galway's contracts with RCS. *Guest*, 2008-NMCA-144, ¶ 32. Without such knowledge, Wilson's and Metro's requisite intention to interfere with the contracts is absent. *Wolf*, 1959-NMSC-044, ¶ 19.

Overpeck and Galway do not allege that Wilson and Metro had knowledge of their contracts with RCS. For this reason alone, their claims must be dismissed. *See Horizon AG-Products v. Precision Sys. Eng'g, Inc.*, 2010 WL 4054131, at *10 (D.N.M.

7

Sept. 28, 2010) (dismissing a tortious interference claim because plaintiff failed to allege knowledge of the contract); see also *Wolf*, 1959-NMSC-044, ¶¶ 19–22

More importantly, it is uncontroverted that prior to this litigation, Wilson and Metro had no knowledge of Overpeck and Galway's contracts with RCS. *See* Statement of Uncontroverted Facts, Nos. 10 and 13. In fact, Wilson and Metro had no knowledge who Overpeck was and only very limited knowledge of who Galway was, and had no knowledge of any work Overpeck and Galway provided in The Trails Subdivision. *See* Statement of Uncontroverted Facts, Nos. 9, 11 and 12. Metro had no knowledge of who RCS was, before this litigation, and Wilson's knowledge was limited. *See* Statement of Uncontroverted Facts, Nos.14, 15 and 16.

Thus, Overpeck and Galway cannot satisfy the first element of their tortious interference claim and the claim, Count VI, must therefore be dismissed.

C. **Civil Conspiracy.**

Dismissal of Overpeck and Galway's tortious interference claim must result in dismissal of Overpeck and Galway's civil conspiracy claim, as well. "A civil conspiracy must actually involve an independent unlawful act that causes harm-something that would give rise to a civil action on its own…Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Eddington v. Burke*, 2001-NMCA-003, ¶ 12, 130 N.M. 67, 17 P.3d 440, 446, cited by *McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F.Supp.3d 1188 (D.N.M. November 19, 2013); *Vigil v. Pub. Serv. Co. of N.M.*, 2004–NMCA–085, ¶ 20, 136 N.M. 70, 94 P.3d 813 (explaining that "a conspiracy

8

claim fails as a matter of law when no actionable civil case exists against the defendants").

Plaintiffs, The Trails, Overpeck and Galway assert a civil conspiracy claim against, among others, Wilson, Aguirre and Metro. Plaintiffs allege in paragraph 180 of the Amended Complaint:

> The wrongful actions of Defendants supporting an unlawful purpose include, but are not limited to: acts of fraud based upon representations relating to the BND project, tortious interference with Plaintiffs' existing contracts with RCS, knowing failure of Defendants to disclose facts material to the BND project and Defendants' conflicts of interest, and extensive breaches of fiduciary duties that were owed to The Trails.

Of these alleged wrongful acts committed by the alleged conspirators, the only claims asserted by Overpeck and Galway against Wilson and Metro is the tortious interference claim. See the Amended Complaint, ¶¶ 180, 185. In paragraph 185, Plaintiffs specifically state: "A civil action in damages lies against Wilson and Metro arising out of Plaintiffs' claims for common law fraud, fraud by non-disclosure, breach of fiduciary duty, and tortious interference with existing contracts." The fraud and breach of fiduciary claims are brought by The Trails against Wilson and Metro and not by Overpeck and Galway. There are no other claims by Overpeck and Galway either (1) directed at Wilson and Metro that support their civil conspiracy claim; or (2) are directed at any person other than Wilson and Metro with whom Wilson and Metro allegedly conspired in connection with the alleged tortious interference with the contracts with RCS. Therefore if Overpeck's and Galway's tortious interference claim against Wilson and Metro is dismissed, there is no other claim Overpeck and Galway can rely upon for their civil conspiracy claim. For this reason, the civil conspiracy claim must be dismissed.

Defendants sought the concurrence in this Motion by Plaintiffs' counsel which was refused.

IV. **CONCLUSION.**

For the foregoing reasons, Defendants, Wilson & Company, Inc., Engineers and Architects and Steven J. Metro respectfully request this Court grant their Motion, dismiss Overpeck's and Galway's claims against Wilson and Metro in Counts VI and IX; and award Wilson and Metro such other and further relief as is just and proper.

Respectfully submitted,

MONTGOMERY & ANDREWS, P.A.

By _____
Kevin M. Sexton, Esq.
John S. Campbell, Esq.
Miguel Archuleta, Esq.
Attorneys for Wilson & Company, Inc.,
Engineers and Architects and Daniel Aguirre
100 Sun Avenue, NE, Suite 410
Albuquerque, NM 87109
(505) 884-4200
ksexton@montand.com
jcampbell@montand.com
marchuleta@montand.com

Foster, Rieder & Jackson, P.C.

By: __/s/ Eric Loman_____
Eric Loman, of Counsel
Attorneys for Steven J. Metro
Third St. N.W., Ste. 1500
P.O. Box 1607
Albuquerque, NM 87103-1607
(505) 767-0577
eric@frjlaw.com

10

## Certificate of Service

I hereby certify that on August 9, 2017, the foregoing was filed electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing: Matthew French, Esq., matt@hammfrench.com and Jason B. Hamm, Esq., Jason@hammfrench.com, Hamm French, PLLC, 3000 N. Garfield, Ste. 205, Midland, TX 79705; Christopher T. Saucedo, Esq., csaucedo@saucedochavez.com, and Brian Griesmeyer, Esq., bgriesmeyer@saucedochavez.com, Saucedo Chavez, P.C., P.O. Box 30046, Albuquerque, NM 87109.

_____
for Kevin M. Sexton, Esq.